IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **STEPHANIE PAULA FARBER** : | |
| : | **CIVIL ACTION** |
| v. : | |
| : | **NO. 22-CV-1817** |
| **LYNN E. FELDMAN, ESQUIRE, As Chapter** : | |
| **7 Trustee** : | **Bankr. No. 21-12147** |

**MEMORANDUM OPINION**

**Goldberg, J.**                                                                                                     **September 4, 2025**

Debtor Stephanie Paula Farber, has appealed from the April 26, 2022 Opinion and Order of United States Bankruptcy Judge Patricia Mayer sustaining the Bankruptcy Trustee's objection to the debtor's claimed exemption of her IRA, thereby disallowing the exemption. The threshold question presented to Judge Mayer was whether a traditional IRA in the debtor's name funded with monies from an inherited IRA was exempt from her bankruptcy estate under Section 522(d)(12) of the Bankruptcy Code. Because I find that it is not exempt, I will affirm Judge Mayer's decision.

**FACTUAL AND PROCEDURAL BACKGROUND**

On October 5, 2021, the Bankruptcy Trustee, Lynn Feldman, filed an Objection to a Claim of Exemption filed by the debtor for an Individual Retirement Account (IRA) in her Chapter 7 proceeding. The trustee's objection alleges that the IRA "was inherited by the debtor and was set up on April 13, 2018," and thus is not exempt. (Bankr. No. 21-12147, Objection to Debtor's Claim of Exemption, ¶ 5). Although the debtor admitted in her response to the Objection that the IRA in question was inherited, in her brief in support of her appeal, she now submits that she did not make a trustee-to-trustee transfer into an account in the name of her deceased father, but rather "withdrew

1

the funds, via rollover, and utilized them to establish her own IRA for her retirement." (Civ. A. No. 22-1817, Debtor's Am. Br. in Supp. of Bankr. App., 5-6). The debtor asserts that she opened this IRA in her name alone some two-and-a-half years before she filed the present Chapter 7 case on August 3, 2021. (Civ. A. No. 22-1817, Debtor's Am. Br., 3). Thus, she claims it is *not* an inherited IRA and is an asset which should be exempt from distribution to her creditors by the trustee. (Id.). (Bankr. No. 21-12147, ECF No. 20, ¶¶ 20, 24).

Following a hearing on the trustee's objection held on February 10, 2022, Judge Mayer took the matter under advisement and subsequently issued its Opinion and Order on April 26, 2022 sustaining the objection. (Bankr. No. 21-12147, ECF Nos. 56, 57). This appeal followed.

**LEGAL STANDARDS**

Under 28 U.S.C. § 158, district courts have jurisdiction to hear appeals "from final judgments, orders, and decrees," and discretionary jurisdiction over "appeals from other interlocutory orders and decrees." 28 U.S.C. § 158(a)(1), (3). In exercising its jurisdiction and reviewing bankruptcy court orders, judgments and decrees, the district court reviews the bankruptcy court's findings of fact for clear error and exercises plenary review over questions of law. Lee v. 6209 Market Street, LLC, No. 23-2454, 2024 U.S. App. LEXIS 11837 at *3 (3d Cir. May 16, 2024) (*per curiam*) (citing In re Giacchi, 856 F.3d 244, 247 (3d Cir. 2017)). As part of this process, the court must "break down mixed questions of law and fact, applying the appropriate standard to each component." Meridian Bank v. Alten, 958 F.2d 1226, 1229 (3d Cir. 1992). A mixed question of law and fact is found whenever a legal precept is applied to the sum of the facts of a case. Id. A bankruptcy court's exercise of discretion is reviewed for abuse, In re Friedman's, Inc., 738 F.3d 547, 552 (3d Cir. 2013), and it abuses its discretion when its ruling rests upon an

error of law or misapplication of law to the facts of the case.  In re O'Brien Envt'l Energy, Inc., 188 F.3d 116, 122 (3d Cir. 1999).

**DISCUSSION**

This appeal raises a single issue: whether the Bankruptcy Court committed an error of law in upholding the trustee's objection to the debtor's claim that her IRA was exempted from the property of her bankruptcy estate.

At the time she filed her bankruptcy petition under Chapter 7 on August 3, 2021, the debtor sought to exempt nearly all of her assets, including her IRA with Allianz (an annuity company) from her estate, invoking the exemption listed under 11 U.S.C. § 522(d)(12):

> (d)  The following property may be exempted under subsection (b)(2) of this section:
>
> . . .
>
> (12)  Retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under . . . 26 U.S.C. § 401, 403, 408, 408A, 414, 457, or 501(a)].

Individual Retirement Accounts are governed under the Internal Revenue Code by 26 U.S.C. § 408, and are defined in subsection (a) to mean:

> a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries, but only if the written governing instrument creating the trust meets the following requirements:
>
> (1) Except in the case of a rollover contribution, . . . no contribution will be accepted unless it is in cash, and contributions will not be accepted for the taxable year on behalf of any individual in excess of the amount in effect for such taxable year under . . . 26 U.S.C. § 219(b)(1)(A).
>
> (2)    The trustee is a bank . . . or such other person who demonstrates to the satisfaction of the Secretary that the manner in which such other person will administer the trust will be consistent with the requirements of this section.
>
> (3)  No part of the trust funds will be invested in life insurance contracts.

(4) The interest of an individual in the balance in his account is nonforfeitable.

(5) The assets of the trust will not be comingled with other property except in a common trust fund or common investment fund.

(6) Under regulations prescribed by the Secretary, rules similar to the rules of . . . 26 U.S.C. § 401(a)(9) and the incidental death benefit requirements of . . . 26 U.S.C. § 401(a) shall apply to the distribution of the entire interest of an individual for whose benefit the trust is maintained.

Section 408 of the Code also recognizes that an IRA can be created as an annuity, which is defined similarly in subsection (b) as:

An annuity contract, or an endowment contract (as determined under regulations prescribed by the Secretary), issued by an insurance company which meets the following requirements:

(1) The contract is not transferable by the owner.

(2) Under the contract –

  (A) the premiums are not fixed,

  (B) the annual premium on behalf of an individual will not exceed the dollar amount in effect under . . . 26 U.S.C. § 219(b)(1)(A), and

  (C) any refund of premiums will be applied before the close of the calendar year following the year of the refund toward the payment of future premiums or the purchase of additional benefits.

(3) Under regulations prescribed by the Secretary, rules similar to the rules of . . . 26 U.S.C. § 401(a)(9) and the incidental death benefit requirements of . . . 26 U.S.C. § 401(a) shall apply to the distribution of the entire interest of the owner.

(4) The entire interest of the owner is nonforfeitable.

. . .

Here, the debtor does not necessarily disagree with the trustee's position that an inherited IRA is not exempted under the Bankruptcy Code, nor does she dispute that at one point she

inherited an IRA. ("Both Trustee and Debtor agree that when an individual inherits an IRA from anyone other than their deceased spouse, they cannot treat the 'inherited IRA' as their own for purposes of exemption under 11 USC § 522(d)(12). . . . The debtor did not make a trustee-to-trustee transfer into an account in the name of her deceased father [;] [s]he withdrew the funds, via rollover, and utilized them to establish her own IRA for her retirement.") (Appellant's Am. Br. in Support of Bkrptcy. App., 5-6). Nonetheless, the debtor now seeks to establish that the IRA is exempted because it is not the one she inherited. ("We disagree that the inherited IRA in question can be considered property of the bankruptcy estate as the inherited IRA ceased to exist in 2018 and a new IRA was formed by Debtor, thereafter.") (Appellant's Am. Br. in Support of Bkrptcy. App., 4). According to her counsel, "whatever she inherited and whatever she did, she is now presently in a qualified IRA since 2018." (Bankr. No. 21-12147, Hrg. Tr. 2/10/22, 9).

In response, the trustee argues that the debtor's IRA was originally funded in an amount in excess of the maximum allowed for annual contributions (as prescribed by 26 U.S.C. § 219(b)(1)(A)), and consequently, it is *not* a qualified IRA under the tax code, and therefore cannot trigger the § 522(d)(12) exemption. (Id., 65; Trustee's Br., 1).

Under Fed. R. Bankr. P. 4003(c), " . . . the objecting party has the burden of proving that an exemption was not properly claimed." As the Third Circuit has explained:

> A claimed exemption is "presumptively valid" . . . Once an exemption has been claimed, it is the objecting party's burden (the trustee in this case) to prove that the exemption is not properly claimed. Initially this means that the objecting party has the burden of production and the burden of persuasion. The objecting party must produce evidence to rebut the presumptively valid exemption. If the objecting party can produce evidence to rebut the presumption, the burden of production then shifts to the debtor to come forward with unequivocal evidence to demonstrate that the exemption is proper. The burden of persuasion, however, always rests with the objecting party.

In re Scioli, 586 F. App'x 615, 616 (3d Cir. May 22, 2015) (citing In re Carter, 182 F.3d 1027, 1029 (9th Cir. 1999)). "To prevail, the party objecting to a claimed exemption must prove the impropriety of the exemption by a preponderance of the evidence." In re Davis, Civ. No. 12-919, 2013 U.S. Dist. LEXIS 2382 at *4 (W.D. Pa. Jan. 8, 2013).

It is clear "that when an individual inherits an IRA from anyone other than their deceased spouse, they cannot treat the 'inherited IRA' as their own for purposes of exemption under 11 U.S.C. § 522(d)(12)." (Debtor's Am. Br., 5). This is in keeping with the Supreme Court's decision in Clark v. Rameker, 573 U.S. 122 (2014), which held that "funds contained in an inherited individual retirement account (IRA)" do not "qualify as 'retirement funds' within the meaning of [the] bankruptcy exemption" set forth in 11 U.S.C. § 522(b)(3)(C), (d)(12). In so holding, the Court found there were three legal characteristics of inherited IRAs which distinguished them from normal traditional and Roth IRAs:

> "First, the holder of an inherited IRA may never invest additional money in the account," thus obviating "the entire purpose of providing tax incentives for accountholders to contribute regularly and over time to their retirement savings." Id., 573 U.S. at 128. "Second, holders of inherited IRAs are required to withdraw money from such accounts, no matter how many years they may be from retirement. . . . That the tax rules governing inherited IRAs routinely lead to their diminution over time, regardless of their holders' proximity to retirement, is hardly a feature one would expect of an account set aside for retirement." Id. "Finally, the holder of an inherited IRA may withdraw the entire balance of the account at any time – and for any purpose – without penalty. . . . Funds held in inherited IRAs accordingly constitute a 'pot of money that can be freely used for current consumption,' not funds objectively set aside for one's retirement."

Id. (quoting In re Clark, 714 F.3d 559, 561 (7th Cir. 2013)).

Here, although the debtor admitted at the bankruptcy hearing that "[t]he IRA was inherited by the debtor and was set up on April 13, 2018,"[1] her testimony seemed to contradict this admission.

The debtor testified she opened the IRA with Allianz[2] with $41,447 on April 13, 2018 using money from Wells Fargo. (Bankr. No. 21-12147, Hrg. Tr. 2/10/22, 55-56, ECF No. 55). Prior to that, she "believed" she took a $41,000 check from a Prudential account to Wells Fargo after getting a medallion put on it from her bank following her father's death in December 2017. (Id.). The debtor stated she didn't know what type of account it was at Prudential, but she used that check to open an IRA account in her name at Wells Fargo. (Id., 56-57). Thus, because the IRA now at issue was rolled into the Wells Fargo account more than three years before she filed her bankruptcy petition, she avers it is a qualified IRA which is exempt from distribution. (Id., 64-65).

Shawn Leayman, the Allianz representative, also testified at the bankruptcy court hearing. Leayman stated that on February 15, 2018, the debtor electronically signed paperwork to establish a traditional IRA annuity in her own name with Allianz in the initial amount of $41,447 using money she had at Wells Fargo. (Bankr. No. 21-12147, Hrg. Tr. 2/10/22, 21-28, ECF No. 55). Leayman did not know where the debtor got the money to fund the Allianz IRA, and while he was aware of the death of her father, he did not know how the money was titled at Wells Fargo. He explained:

---

[1] See Trustee's Objection to Debtor's Claim of Exemption, ¶ 5 ECF No. 20 and Debtor's Response thereto, ¶ 5, ECF No. 23 in Bankr. No. 21-12147.

[2] It appears from the testimony of Shawn Leayman, the Allianz representative who set up the Debtor's traditional IRA, that the IRA at issue is an IRA annuity. (Bankr. No. 21-12147, Hrg. Tr. 2/10/22, 14-15, ECF No. 55).

When she came to me she had money at Wells Fargo that she wanted to put into this vehicle and when we talked about it, I didn't see anything that would have told me that it was an inherited IRA in my professional opinion at the time because, again, you cannot place an inherited IRA into Stephanie Farber's name. So my professional opinion is that at Wells Fargo this was an IRA that was moved over to us in Stephanie Farber's name and it came over in like fashion, meaning it was an IRA in her name there.

(Id., 28-29).

Leayman was further questioned as follows:

Q. So the inherited IRA was at Wells Fargo?

A. Again, I'm making an assumption of that, right? If –

Q. Okay. I don't want you to assume. I only want you to testify (sic) things about which you have personal knowledge.

A. Okay. The knowledge I have is that it was an IRA at Wells Fargo in her name that was moved over to me in the similar fashion.

Q. And it was your understanding, from speaking with her, that the source of that IRA was an inheritance from her father who had passed away?

A. Yes.

. . .

Q. So this was death benefit proceeds from life insurance or an annuity?

A. Yes.

Q. And that described the source of the funds?

A. Correct.

Q. Did she have something to show you that, did she have a statement or anything like that?

A. I'm going off of memory from back then, I reached out to Allianz as well, and we have on file that it was sent from Wells Fargo to us and we sent to the transfer paperwork to them. The important part of that is, is that the only way that that transfer could have been completed would be that that was in Stephanie Farber's name. It would have been rejected otherwise.

8

(Id., 29-30).

> . . .
>
> Q. And transfer paperwork, what does that consist of? I don't see anything in here that would indicate transfer.
>
> A. So transfer paperwork is something that gets sent over to Allianz that's outside of the application. That gets sent to Allianz, then sent to Wells Fargo, and again, this is what I was referencing. Those transfer paperwork would have been rejected when received at Wells Fargo if it would have been an inherited IRA or an IRA in her father's name. Obviously, the name wouldn't have matched, they'd have said we have an account here for Stephanie Farber we cannot move in her father's name.
>
> Q. If she was the recipient of an inheritance from her father in the amount of $44,000, could she have put that into an IRA?
>
> A. If she inherited 44 – well there's IRA stipulations, right? So a person could only put so much in a year, that being $7,000, so to answer the question, that answer would be, no.

(Id., 31).

The trustee presented an expert witness, Charles Persing, a Certified Public Accountant who is certified in financial forensics and is a Certified Fraud Examiner, Insolvency and Restructuring Advisor, and Certified Valuation Analyst. (Id., 40). Mr. Persing testified that based on the information he was provided regarding how this annuity contract was created, it was his opinion that the Allianz IRA annuity was not a qualified IRA as of the date of the debtor's petition because "if this was a death benefit annuity that was not hers, and either in her father's IRA or just a death benefit that came directly to her outside of an IRA, she could not start a new IRA with $41,000." (Id., 44-49, 51, 53).

After hearing this evidence, Judge Mayer concluded the IRA was not inherited but was not exempt. I must review Judge Mayer's findings of fact for clear error and exercise plenary review over questions of law. Under the clearly erroneous standard of review, "'a finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence

9

is left with the definite and firm conviction that a mistake has been committed.'" Alimbaev v. Atty. Gen'l of the United States, 872 F.3d 188, 195 (3d Cir. 2017) (quoting United States v. Gypsum Co., 333 U.S. 364, 395 (1948)). "'Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous,' and where the disputed finding of fact is a credibility finding, 'even greater deference' is owed, 'for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.'" Id. (quoting Anderson v. City of Bessemer, 470 U.S. 564, 573 (1985)). In other words, the clearly erroneous standard "does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." Id. Plenary review requires the court to review legal questions without giving deference to the bankruptcy court's assessment or interpretation. United States v. Caraballo, 88 F.4th 239, 243 (3d Cir. 2023).

After hearing and observing the witnesses' testimony in the hearing, Judge Mayer found Shawn Leayman's testimony to lack probative value given that he did not know where the money in question came from to establish the Allianz IRA. Conversely, Judge Mayer accepted the testimony of the Trustee's expert witness Charles Persing, CPA, that because he was unaware of any pre-existing IRA in the debtor's name alone, the most she could have contributed to establish a valid IRA in 2018 was $6,000 to $7,000. (Bankr. No. 21-12147, 4/26/22 Opinion, 5-6). These conclusions are far from "clearly erroneous."

Judge Mayer noted the debtor testified that when her father died in December 2017, he had an account at Prudential Life Insurance in which he left her an interest, she did not know what type of account it was, but after securing a medallion signature from Wells Fargo (her bank), she received a $41,000 check that she took to Wells Fargo and used those funds to set up an IRA in

10

her own name. (Id., at 6, citing Hrg. Tr. at 55-57). She then rolled the Wells Fargo IRA into the Allianz IRA annuity. (Id.).

Based upon this testimony, Judge Mayer found that the debtor was not seeking to exempt an inherited IRA, but this did not mean that it was properly exempted. Rather, the evidence "call[ed] into question the tax-exempt status of the original IRA at Wells Fargo" such that "[i]f that account is not tax-exempt, then neither is the individual retirement annuity at Allianz [and] [t]hat would likewise mean that the annuity is not exempt from the bankruptcy estate." (Id.). In resolving that issue, Judge Mayer purposely looked to 26 U.S.C. § 408(b)(2)(B), under which an IRA annuity's validity is premised upon the limitation of the annual premium on behalf of an individual. To be valid, that premium cannot exceed the dollar amount in effect under 26 U.S.C. § 219(b)(1)(A). For taxpayers of Farber's age (52) in 2018, that amount was $6,500, including "catch-up contributions." (Id. at 7-9). By the debtor's own admission, she took the entire $41,000 which she received from Prudential and used it to open an account or IRA at Wells Fargo. Even crediting the debtor's belief that the Wells Fargo account was indeed an IRA, $41,000 was well in excess of the maximum premium amount allowable in 2018 for contribution to an IRA, and thus even if it was designated as an IRA, it was invalid. I therefore find no error in Judge Mayer's finding on this issue.

The trustee also argued that in opening the Wells Fargo IRA in an amount which exceeded the maximum annual contribution limit, the debtor engaged in a "prohibited transaction" under IRC § 408 which disqualified the account from tax exempt status and rendered it "nothing more than a cash account which she may not exempt from the bankruptcy estate." (Id., at 10 (citing Hrg. Tr. 2/10/22, at 64). Under § 408(e)(1), "[a]ny individual retirement account is exempt from taxation under this subtitle [26 U.S.C. § 1 *et. seq.*] unless such account has ceased to be an

11

individual retirement account by reason of paragraph (2) or (3). . . ." Paragraph 2, in turn provides in relevant part:

> **(A)** In general. If, during any taxable year of the individual for whose benefit any individual retirement account is established, that individual or beneficiary engages in any transaction prohibited by . . . 26 U.S.C. § 4975 with respect to such account, such account ceases to be an individual retirement account as of the first day of such taxable year. . . .

"Prohibited transactions" are defined in Section 4975(c) as meaning "any direct or indirect" –

> (A) sale or exchange, or leasing, of any property between a plan and a disqualified person;
>
> (B) lending of money or other extension of credit between a plan and a disqualified person;
>
> (C) furnishing of goods, services, or facilities between a plan and a disqualified person;
>
> (D) transfer to, or use by or for the benefit of, a disqualified person of the income or assets of a plan;
>
> (E) act by a disqualified person who is a fiduciary whereby he deals with the income or assets of a plan in his own interest or for his own account; or
>
> (F) receipt of any consideration for his own personal account by any disqualified person who is a fiduciary from any party dealing with the plan in connection with a transaction involving the income or assets of the plan.

In applying the foregoing criteria to this case, Judge Mayer found that the debtor's only alleged wrongdoing was her contribution of too much money into her own IRA account, and thus she did not engage in a prohibited transaction under § 4975. The record in this matter is in accord and I once again agree with the bankruptcy judge's factual findings and legal conclusions on this point.

Finally, to determine whether the debtor's Allianz IRA annuity qualified as "a fund or account that is exempt from taxation under . . . section 408," and was thereby exempted from the bankruptcy estate under 11 U.S.C. § 522(b)(2), Judge Mayer examined the tax consequences under

the Internal Revenue Code of contributing more than the prescribed annual amounts to an IRA. In so doing and after determining that Section 4973 of the IRC, 26 U.S.C. § 4973(a)(3), imposes a 6% annual tax "of the amount of the excess contributions to such individual's accounts or annuities," Judge Mayer found that notwithstanding that it may have been originally created at Wells Fargo and subsequently "rolled over" to Allianz several years before the filing of the bankruptcy petition, the IRA in question could never qualify as an IRA for exemption purposes under the bankruptcy code because "the excess contribution gave rise to tax liability and precluded the tax-exempt status of the account beyond the $6,500.00 limit." (Id., at 16). "Neither the rollover of the annuity nor the passage of time affected this status," and "by definition then, the Debtor's current IRA is not tax exempt." (Id.) (citing Mangan v. Brainard, 652 B.R. 1, 10 (Bankr. Conn. 2023) ("Because funds contributed in excess of the yearly limit are not exempt from taxation under § 408(a), they cannot be exempted by a bankruptcy debtor under § 522(d)(12)."); In re Cherwenka, 508 B.R. 228, 241 (Bankr. N.D. Ga. 2014) (annuity held disqualified from tax exempt status where the debtor's 2003 contributions in the amounts of $250,000 and $100,000 greatly exceeded the statutorily prescribed limit of $3,000 for that year); In re Ludwig, 345 B.R. 310, 317 (Bankr. D. Colo. 2006) (Debtor's claimed exemption for annuity disallowed in part because annuity exceeded annual contribution limit); In re Rogers, 222 B.R. 348, 350 (Bankr. S.D. Cal. 1998) (holding lump sum premium payment for debtor's annuity contract "far exceeded" former $2,000 annual limit)).

In view of the language of Section 522(d)(12), providing that retirement funds may be exempted only "to the extent that those funds are in a fund or account that is exempt from taxation . . . under 26 U.S.C. §§ 401, 403, 408, 408A. 414, 457, or 501(a)," and given that the Wells Fargo IRA, if it in fact was an IRA, could not have been opened in an amount in excess of $6,500 in 2018, I agree with Judge Mayer's ruling that it was not a "qualified" or tax exempt IRA. Thus,

13

even giving the benefit of the doubt to the debtor that she "rolled over" an IRA at Wells Fargo into the Allianz IRA annuity on April 13, 2018, that rollover did nothing to render any of the funds in that annuity validly exempt from taxation or from her bankruptcy estate.

For all of the above reasons, I will affirm the April 26, 2022 Order of the Bankruptcy Court, and uphold the disallowance of the debtor's Allianz IRA.

An appropriate Order follows.